For defendants: Philip C. Joslin and McGovern & Slattery.

Delia Mongeon
vs. } Div. No. 21212
Cyrille J. Mongeon

July 3, 1928.

BAKER, J. The grounds set out in the petition are adultery, extreme cruelty and gross misbehavior. The petition also asks for alimony and for the custody of two minor children.

The parties hereto have been married nearly thirty years and separated July last. The petitioner is the respondent's second wife. They have several children, some of whom are fully grown. The respondent conducts a provision store in the city of Woonsocket, and also owns considerable tenement house.

property there. He has been industrious and frugal during his life and has provided well for his family and given them ordinary comforts and pleasures. He has also given his children a good education.

Most of the testimony relating to the charge of extreme cruelty applies to happenings since the early part of the year 1925, although some few occurrences were prior thereto. About March of that year the petitioner became seriously ill. She was taken to a hospital for observation, X-ray plates were taken, and several doctors examined her. It was finally determined that she was suffering from pernicious anaemia and for some time her health continued to fail. She was not expected to recover and remained at her home, most of the time in bed under the care of members of her family and others. Finally one of the doctors prescribed a certain diet under which she improved greatly and eventually became practically well. Most of the charges of cruelty relate to the period of her illness. In general the petitioner complains that while she was sick the respondent neglected her; that he failed to provide her with sufficient medical attention and with a nurse when she desired one; that it was with difficulty she succeeded in obtaining from him a wheel-chair; that he was in the habit of swearing at her and using other bad language; that he threatened her with bodily injury, although he placed his hands upon her only once and that was in his store after she had recovered, and that he made statements to the effect that he hoped she would die. She also claims that at times prior to her illness and after, the respondent furnished her from his store with food which was not fit for consumption. The respondent denies practically all of these charges of cruelty and placed on the stand witnesses who tended to corroborate him. On the other hand, the pe-

titioner is to some extent in this connection supported by the children, all of whom testified in her favor.

After a careful consideration of all the evidence bearing upon this allegation, the Court is very clearly of the opinion that the testimony entirely fails to support the petitioner's claim. At the time when most of the acts which are complained of took place, the petitioner was quite ill, very nervous, and obviously had a tendency, doubtless due to her sickness and to the period in her life through which she was passing, to magnify and enlarge small matters. It is perfectly clear from the evidence that the respondent furnished his wife with sufficient and proper food, and also with ample medical attention and with help about the house. He has explained in a reasonable way the testimony relating to the charge that he had said he hoped she would die, namely, that he referred to this matter in a sympathetic way while his wife was suffering, and not to her but to some of the children. The Court has serious doubt whether he ever used any very violent or improper language or threats to the petitioner, and the incident which occurred in the store in 1927 is far too slight to form a basis for any charge of cruelty.

The allegations of adultery and gross misbehavior may be considered together because they relate largely to the same person specifically named in the bill of particulars and in the evidence. In this matter the petitioner's evidence rests chiefly on statements in the nature of admissions or confessions said to have been made by the respondent to various persons.

It is claimed on behalf of the respondent that the authorities hold that it is not proper for the Court to base a decree for divorce on admissions or confessions alone, said to have been made by the respondent. The obvious object of this ruling is to prevent the obtaining of a divorce through the collusion of the parties. There are many cases which in substance follow the rule as above set out. In some states the matter has been regulated by statute. An examination of many of these cases, however, tends to show that in them collusion unmistakably appears or the evidence was so very scanty as to warrant the Court in holding that the petitioner's case was not proven. Many states, however, have qualified the somewhat narrow and rigid ruling above referred to by holding that, even though there be no corroborative evidence to support the alleged admissions or confessions, if the facts are so plain that no doubt is left in the mind of the Court as to the truth of the admission or confession, and if it is unmistakably clear that there is no collusion in the case, then the Court will allow a divorce based substantially on the admission and confession alone. It seems to the Court that this is the proper and more reasonable ruling. Apparently the question has not been directly before the Court in this state, although in the case of *Borda* vs. *Borda*, 44 R. I. at page 342, the question of the credibility of a party's admission was discussed at some length. In 40 A. L. R. at pages 630 and 643, is a comprehensive note following the case of *Marshall* vs. *Marshall*, dealing with the subject. See also Vol. 2, Bishop on Marriage, Divorce and Separation, Sections 718 to 724.

In this case, while the statements said to have been made by the respondent to various persons vary more or less their general trend and the reasonable deduction to be drawn from them is that he had improperly associated with the woman referred to in the evidence and named in the bill of particulars. The testimony shows that these statements are said to have been made at various times and under different circumstances to members of his

family and also to several outsiders. The testimony of the witnesses Bourassa, Gerard and La Riviere seems to the Court quite credible. They were not in any way connected with the respondent or interested in this case, and the first two had a reason for inquiring of the respondent as to his relations with the woman in question. No good reason occurs to the Court why these witnesses should make up the testimony they gave on the stand.

Of course the fact that the woman in question bears a certain relationship to the husband of the respondent's daughter and that she is a married woman with a family should cause the Court to scrutinize this matter with great care. At the same time, in this connection, there can be considered a statement said to have been made by the respondent in substance that he was supporting the family in question, and perhaps this can account for the situation.

The Court is fully satisfied, after weighing all the evidence in this case, that it cannot be successfully contended that there is anything in the nature of collusion between the parties. In fact, the respondent has most vigorously and seriously contested this petition. The Court is also of the opinion that the testimony given by the petitioner and her witnesses relating to the said admissions and confessions made by the respondent is true and worthy of belief, and that under the more liberal construction of the law as above referred to, there is ample here to sustain the granting of the petition, certainly on the ground of gross misbehavior, even if it might be held that the testimony was not sufficiently specific to show adultery.

An examination of the evidence, however, leads the Court to feel that there is a certain amount of corroborative testimony tending to support the said admissions and confessions. For example, it appears that the respond-

ent and the woman in question were seen at times driving in the respondent's automobile alone together. On at least one of these occasions the respondent was out making collections for his business. Also, the respondent and this woman went together to see some fireworks. It is true that going and coming others were with them, but during the exhibition they remained alone in the automobile for some period of time. Further, the respondent did not or would not remove her from one of his tenements where she lived close by his own home, even though often requested to do so by the petitioner. There is also the incident in the store, about February, 1927, and the fact that at times the respondent has been seen going to this woman's tenement delivering groceries.

It should also be noted that the respondent in his evidence failed to deny the making of the statements which the petitioner claims to be admissions or confessions of misconduct with the woman in question and failed to give any evidence whatsoever relating to her. This attitude of the respondent, as revealed in his testimony, cannot, in view of all the surrounding facts and circumstances and in view of his vigorous defence of the case along other lines, be considered in the judgment of the Court in the light of collusion. Rather, it would appear perhaps, that he failed to testify about these matters because he could not truthfully deny them.

As a final matter of defence the respondent urges that the conduct of the petitioner should prevent her from obtaining a decision. He contends that she was nervous, hard to satisfy, nagging, and that she made conditions unbearable for him. He urges that she has brought this action for the obtaining of a portion of his property; that for some time he has been unable to satisfy her wants in regard to money, and, further, that she desires

to live in a different locality and in a more expensive manner.

A consideration of the testimony shows that on the whole the respondent has done pretty well for his wife and children, and the Court is inclined to believe that there is a semblance of truth in the respondent's contention that his wife would like to live in a somewhat more elaborate manner and possibly in a different locality. At the same time, the Court feels that if the matter of the other woman had not come up, these parties might have been able to become reconciled and that this situation is the real difficulty between them. Further, in connection with the claim of the respondent that his wife was hard to saitsfy and that she nagged him constantly, it should be borne in mind that since 1925 she has been very ill, and that due allowance should be made for this situation.

A careful review of the evidence leads the Court to the opinion that there is nothing in the conduct of the petitioner which could be termed cruelty towards the respondent or which is of such a serious nature as to prevent her from maintaining this petition.

The more likely and more reasonable situation, it seems to the Court, is that the respondent, his wife being extremely ill and not expected to live, and no marital relations having taken place between them since February, 1925, turned to the society of the woman referred to in the bill of particulars.

The Court will grant the petition on the ground of gross misbehavior and award to the petitioner the custody of the two minor children mentioned in the petition.

The matter of alimony is left open for further hearing.

For petitioner: Charles A. McGee and James H. Rickard.

For respondent: Fitzgerald & Higgins and Guillaume Myette.